(31 Misc. Rep. 350.)

PEOPLE ex rel. COFFEY v. DEMOCRATIC GENERAL COMMITTEE OF KINGS COUNTY.[1]

(Supreme Court, Special Term, Kings County. April, 1900.)

1. ELECTIONS—DEMOCRATIC GENERAL COMMITTEE—MEMBERSHIP.

Under the primary election law (Laws 1898, c. 179; Laws 1899, c. 473), providing for the control of primary elections and the organization of a general committee of each political party in every county for the management of its affairs, to be composed of members elected thereto by the electors at the primary elections, the one receiving the greatest number of votes at a primary election for committee membership, as shown by the canvass, is entitled to the certificate, and, on complying with the party rules and regulations, has the legal right to participate in the committee meetings, and perform the duties and exercise the functions of such membership.

2. SAME—RULES AND REGULATIONS.

The general committee of a political party, organized under Laws 1898, c. 179, has power to adopt rules and regulations for its guidance and the orderly conduct of its deliberations, provided such rules are not contrary to nor inconsistent with the provisions of said act, as required by section 9, subd. 2, thereof.

3. SAME—POWER TO ENFORCE OBEDIENCE.

Under Laws 1898, c. 179, providing that the rules and regulations of a party may prescribe the amount of annual dues to be paid by each member to the general committee of the party, and may contain a provision precluding any member who may fail to comply therewith from participating in the meetings of the committee, a county or general committee has the power to discipline a member failing to comply with its rules and regulations, not contrary to any law, by excluding him from participation in its meetings.

4. SAME—TEST OF PARTY FEALTY—MANDAMUS.

The test of party fealty under the primary election law (Laws 1898, c. 179) being a general sympathy with the principles of the party, and an intention to support its nominees for state or national offices at a general election, a charge of "disloyalty" and of conspiring with others to defeat "the regular nominees" of the Democratic party, without any showing

---

[1] Reversed in 65 N. Y. Supp. 57.

that such nominees were candidates for state or national offices, is not a sufficient answer to a proceeding for a peremptory writ of mandamus for petitioner's restoration to membership in a county or general committee of the Democratic party.

5. SAME.

A county or general committee organized under the primary election law (Laws 1898, c. 179) may adopt rules requiring its members to support all of its nominees, for whatever offices they may be candidates, and to be loyal to its principles and party interests.

6. SAME—PLEADING.

An answer to a petition for mandamus, to restore petitioner to membership in a general committee of a political party, which alleges that the rules and regulations of the committee contain "full power and authority for the expulsion of a hostile member," and that the committee was duly authorized and "empowered by said rules and regulations to expel relator," but failing to set out the rules, is not sufficient to enable the court to determine whether the committee has rules, not contrary to law, which authorize it to exclude a member from participation in its meetings, and therefore insufficient.

Application by the people, on relation of Michael J. Coffey, against the Democratic General Committee of Kings County for a peremptory writ of mandamus. Writ granted.

Isaac M. Kapper, Luke D. Stapleton, and F. E. McElroy, for relator. Charles J. Patterson and Henry J. Furlong, for respondent.

MADDOX, J. Relator seeks a peremptory writ of mandamus commanding his restoration to membership in and the replacing of his name upon the membership roll of the respondent. It is conceded that he was elected to such membership at the annual official primary held in September, 1899; that, after having qualified by paying the prescribed dues, he was, by resolution, expelled therefrom at a meeting of the respondent committee held on March 23, 1900, and that he has since been deprived of and debarred from exercising the rights and privileges of such membership. The answering affidavits allege that such expulsion was because of relator's disloyalty and open hostility to the Democratic party, and also his conspiring with others to defeat its regular nominees. Relator contends that the respondent committee had no power to expel; that he held by election, as a member of said committee, a public office created by the primary election law for the term of one year; and that there was no legal authority for the action complained of. If the respondent committee had legal power so to do, and its rules and regulations, not contrary to any provisions of law, contained an appropriate provision therefor, then this proceeding must fail, since the propriety of its action cannot be reviewed here, nor can any error of fact or of law in such action be corrected, or its decision reversed on this application, and relator would then be remitted to another proceeding, that of certiorari. The needs for reformation in the conduct of political committees, conventions, and primaries led to the enactment of the primary election law (Laws 1898, c. 179, amended by chapter 473, Laws 1899), whereby the purposes are to give to the elector, if he so desires, the legal right to participate in the management and affairs of the party of his political faith and convictions; to encourage in-

dependence of political action within party organizations; for secrecy in declaration of party principles and in primary voting; to protect the elector in exercising such rights by providing for honestly conducted primaries, conventions, and committees; in fine, to improve political action and promote purity in the conduct of political organizations. This salutary measure, remedial in character, should be liberally construed, and much betterment in political conditions may well be looked for in both party organizations where the provisions of the act are now applicable, for it can be well said that the political abuses calling for that enactment were not solely within either one of the great political parties. Before a citizen can exercise the privileges and franchise given by that act, he must be qualified for registration as a voter at a general state election, and have declared that "he is in general sympathy with the principles of the party" which he has designated, and that it "is his intention to support generally at the next general election, state or national, the nominees of such party for state or national offices." Section 3, subds. 1, 4, 5. It is a public statute, "controlling * * * in cities * * * having five thousand inhabitants or more, * * * (4) on the choice in such cities * * * of the members of political committees and on the conduct of political committees, in and for any political subdivision of the state * * *" (section 1), and provides that "each party shall have a general committee for each county, except that in the city of New York there may be, in lieu of, or in addition to, a general committee for each county wholly therein, a general city committee or general borough committees, or both, as the rules and regulations of the party may prescribe" (section 9, subd. 1); the term "general committee" applying in the city of New York to the county committee and such city or borough committees as may be established by any party (section 2). The respondent is such general committee of the Democratic party in and for Kings county, and its members, being the delegates from each assembly district, which was its unit of representation, were elected at the primary election held on the annual primary day in September, 1899 (section 9, subd. 1); that being the day fixed for "the election of all committeemen who are to be chosen at a primary and not at a convention" (section 4, subd. 1, par. 3). The primary election inspectors are sworn public officers, and the oath required of each included "his duties as a primary election officer, and all duties prescribed by" the act. Section 5. They canvass the votes cast (section 8, subd. 1), and immediately upon its completion "make public oral proclamation of the result thereof," whereupon it is their duty to "make a written statement of such result," together with a duplicate, filing such original statement with the custodian of primary records immediately after its completion (section 8, subd. 2). The custodian of primary records shall "forthwith proceed to canvass the statements so filed" from the various election districts in the unit of representation,—here the assembly district; and "the secretary of any political committee shall be entitled to receive, upon demand, a certificate of the result of any such election in any unit of representation comprised within the territory within which such committee represents a party"; it also being the

duty of such custodian to "promptly deliver upon demand to any person, who, by the statements so filed and canvassed, is shown to have been elected * * * a member of a committee, * * * a certificate of such election. * * * Such certificate or a duplicate thereof, shall be sufficient to entitle the person named therein to be admitted to the * * * committee to which he shall have been elected." Section 8, subd. 4. Thus the right to membership in such committee is perforce of the primary election and of the votes cast thereat by the qualified electors, the result thereof being evidenced by the certificate of the custodian of primary records, which the statute declares "shall be sufficient to entitle the person named therein to be admitted to the * * * committee to which he shall have been elected." That right exists under and by virtue of the statute,—the primary election law. It grows out of the exercise by the qualified elector of his party suffrage, of his legal right to vote at the official primary, and hence I cannot give assent to the contention of respondent's counsel presented upon the argument that the respondent committee is the judge of the election and qualifications of its members, or that it has inherent power to expel such members. Those receiving the greatest number of votes for committee membership, as shown by the canvass, are entitled to the certificate, and upon complying with the party rules and regulations it is the legal right of the person so elected to participate in the committee meetings, and to perform the duties and exercise the functions of such membership. The person so chosen is the legal representative of the qualified members of such party organization, and it is likewise their right that their said choice shall be recognized. All deliberative bodies—and such is a county general committee—have, unless expressly limited by the creating body, the inherent right and authority to adopt rules and regulations for their guidance and the orderly conduct of their deliberations, and this right and authority in political parties, conventions, and committees is, indeed, recognized by the act in question, providing as it does for the adoption thereof (section 9, subd. 1); the only limitation being that such rules and regulations "shall not be contrary to, or inconsistent with, the provisions of this act, or of any other law, and shall not be amended except upon reasonable notice." Section 9, subd. 2. "A transcript of every rule and regulation * * * and of every amendment thereof, duly certified," shall be filed with the custodian of primary records within three days after its adoption, and, if no rules or regulations are adopted at the organization of the committee, which is annually, then those "adopted by the last preceding county or general committee * * * shall remain in full force and effect until repealed or amended in accordance with the provision of" that act. Section 9, subd. 1. Thus having the right to adopt rules and regulations, the power to enforce obedience to and compliance with the same by its members must, in my opinion, be presumed, in the absence of some statutory inhibition, ever keeping in mind, however, the command of the statute that such rules and regulations "shall not be contrary to, or inconsistent with, the provisions of this act, or of any other law."

Counsel for relator have not cited, and I have been unable to find, any legislative declaration against the county or general committee enforcing such rules and regulations, but find, on the contrary, that by the primary election law it is provided that "the rules and regulations of a party may prescribe the amount of annual dues to be paid by each member of such committee to such committee, for the purpose of defraying the expenses thereof, and may contain a provision precluding any member who may fail to comply therewith, from participating in the meetings of such committee." Id. The contention of relator's counsel that such latter provision applies only to those who fail to pay such annual dues is without merit, since the member is called upon to comply with the rules and regulations as a whole; not that he shall be compelled only to pay the prescribed annual dues, and that thereupon, he may, with impunity, violate and disregard all the other requirements thereof. If that were so, what, then, would be the value or benefit to be derived from such rules? None whatever, and an anomalous condition would certainly exist, the committee having, by authority of the statute, adopted such rules and regulations, but unable to compel obedience thereto, unable to preserve order and decorum, if you please, and without power to compel respect by its members for its actions as a deliberative body. Can it be that that was the legislative intent? I think not, and am of the opinion that the word "therewith" relates to the subject-matter, the rules and regulations as an entirety, and not only to the single provision prescribing the amount of annual dues; for it is the rules and regulations that may "contain a provision precluding any member who may fail to comply therewith from participating in the meetings of such committee." My conclusion upon that question is, therefore, that a county or general committee has the power to discipline a member failing to comply with its rules and regulations not inconsistent with or contrary to any law, by precluding him from participation in its meetings. If, in enforcing its rules and regulations, a committee shall do any wrong, violate any law or any of the rights of a member, a remedy is provided. Every safeguard has been cast about the right of the elector to exercise his privileges and his franchise under that act, and no rule or regulation inconsistent with or contrary to any law can be enforced by the committee. Delegates to a general committee are elected annually at the official primary, and the committee so elected "shall take office at the time fixed by the rules and regulations, except that such time shall not be later than the first day of January succeeding their election." On the day fixed the members of the committee shall meet and organize; and the delegates elected thereto hold a quasi public office until the next official annual primary, and until the election of their successors, for no definite term or tenure of such office is fixed.

Having thus reached the conclusion that a party committee, having rules and regulations not contrary to or inconsistent with any law, and containing a provision precluding any member failing to comply therewith from participating in its meetings, and a transcript of which has been filed, as required by the act, may enforce obedience thereto and compel compliance therewith, the question now remains whether

respondent's action, as complained of by the relator, was authorized by its rules, as provided for by the statute. The respondent had rules and regulations, which were filed with the custodian of primary records, as required by the act; but such rules are not a part of the papers on this motion, are not before the court, and the consideration thereof must be confined to. that which may appear in the moving papers and the opposing affidavits. On the argument the court suggested that a copy be submitted, but this was objected to by respondent's counsel, and the court is limited to the facts stated in the affidavits, and must disregard conclusions. The test of party fealty is a general sympathy with the principles of the party, and an intention to support its nominees for state or national offices at a general election, state or national. Relator was charged with hostility and disloyalty to respondent, and with conspiring with others to defeat "the regular nominees" of the Democratic party, but it nowhere appears that such nominees were candidates for state or national offices, and to be elected at a state or national election; and, in my judgment, it is not the intention of the act to require of a party elector more than its language fairly implies, for, as before said, it is remedial, and must be liberally construed. Undoubtedly, opposition to a regular party nominee would be hostility and disloyalty to the party organization, and the party rules may well contain provisions requiring support by its members of all its nominees for whatever offices they may be candidates, and loyalty to its principles and party interests. Such committee can discipline its members only, not the party elector, for the statute plainly provides that such committee member may be precluded from participating in its meetings. Were there such provisions in the respondent's rules and regulations? If there were, the same are not set out in the answering affidavits, and are not before the court. The statements in Mr. Maguire's affidavit "that the rules and regulations   *   *   *   contain, either in express words or by necessary implication, pursuant to the primary election law,   *   *   *   full power and authority   *   *   *   for the expulsion of a hostile member," and "that the respondent committee" was duly authorized and "empowered by said rules and regulations to expel the relator," are but the conclusions of the affiant, as is also the statement of Mr. Young that "said rules and regulations contain provisions for the expulsion of a member,   *   *   *   not inconsistent with the primary election law,   *   *   *   and   *   *   *   in strict accordance with the provisions of the said primary law." It is said that relator was expelled for having violated and failed to comply with the committee's rules duly adopted, and yet the rules are not before the court that it may determine, as a matter of fact and of law, that the respondent had rules, not inconsistent with or contrary to any law, containing a provision precluding a member failing to comply therewith from participating in its meetings. All statements of facts contained in the opposing affidavits are deemed and to be taken as true, but mere conclusions of fact or of law have no force; for, as was said by Mr. Justice Cullen in People v. Coler, 34 App. Div. 170, 54 N. Y. Supp. 639, citing In re Freel (Sup.) 38 N. Y. Supp. 143, and In re Guess, 16 Misc. Rep. 306, 38 N. Y. Supp. 91: "While the rule is strict that all facts

averred in answer to an application for a peremptory writ, whether of an affirmative character or mere denials, must be taken as true, the rule is equally strict that 'affirmations which are only conclusions of law or fact, or are indefinite or general statements, are of no avail, and worthless," and "a denial in gross without stating facts is a mere conclusion." Consequently, no authority having been shown for respondent's action, the motion is granted, but without costs.

Motion granted, without costs.